**RAND DEVELOPMENT CORPORATION, plaintiff**
vs.
**Mario S. SUS, Jr., MARIO SUSI & SON,INC.,**
**Mario S. SUSI, Joseph M. SUSI and Raymond P. SUSI, d/b/a SUSI BROS., MARIO SUSI & SON INC.,**
**and SUSI BROS., joint venturers, T EQUIPMENT CORP. Joseph A TUMULIS, INSULFABPLASITCS, INC., ST. PAUL FIRE AND MARINE IN- SURANCE CO., defendants**

No. 134351

Superior Court
Commonwealth of Massachusetts

**November 30, 1981**

**Thomas J. May**, counsel for plaintiff
**Harvey Heafitz, John Daly, Francis Matera**, counsel for defendant

## RULINGS, ORDERS AND MEMORANDUM OF DECISION IN THE DEFENDANTS TAMULIS' AND T EQUIPMENT CORP'S MOTION TO DISMISS

### Introduction

The defendant Tamulis has moved to dismiss the plaintiff's complaint pursuant to Mass. R. Civ. P. 12(b)(6) for the reason that "said Complaint asserts that the Defendant 'disregarded' the allegedly wrongful actions of other Defendants to this action. This, as a matter of law does not constitute a cause of action for 'interference with contractual rights' ". The defendant T Equipment Corp's motion to dismiss, also pursuant to Mass. R. Civ. P. 12(b)(6), asserts that "...said Complaint is based upon a subcontract, which contract was conditional and which conditions, to wit: approval by the General Contractor and the Owner of the Project, were never received, as evidenced by the affidavit submitted herewith."

### Facts

At some time not material hereto the defendant Mario Susi & Son, Inc., formed a joint venture with three individual defendants, Mario S. Susi, Joseph M. Susi, and Raymond P. Susi, who had been doing business as a partnership known as Susi Bros. (those individuals and entities hereinafter collectively referred to as "Susi"). On May 19, 1979, the joint venture entered into a contract with the Commonwealth of Massachusetts

Department of Public Works to reconstruct a section of Huntington Avenue in Boston. On June 12, 1979, Susi subcontracted with the defendant T Equipment Corp. for the preparation of certain sites and for the construction of ten MBTA platform shelters. On July 20, 1979, T Equipment Corp. entered into a sub-contract with the plaintiff Rand Development Corporation to construct the shelters for $384,370 and in connection therewith to provide all labor, materials, and the equipment itself. The plaintiff thereafter began to negotiate with Insulfab Plastics, Inc. for the purchase of the necessary materials to construct the shelters. For reasons not clear from the papers in the file, Susi then issued a purchase order to Insulfab for those materials, requesting delivery thereof to the plaintiff. Thereafter the plaintiff modified its contract with T Equipment Corp. on April 30, 1980 to reflect a lower contract amount in the sum of $175,410. Thereafter Susi purportedly instructed Insulfab Plastics, Inc. to deliver the materials to Susi rather than to the plaintiff and notified the plaintiff that another contractor would construct the shelters. The plaintiff then commenced this action against Susi and the other defendants for interference with its contractual rights and for breach of contract.

Count V of the plaintiff's complaint alleges that the defendant Tamulis (the plaintiff's memorandum in opposition to Tamulis' motion indicates that he is the president of T Equipment Corp.), knowing the terms of plaintiff's contract and the facts set forth above, "totally disregarded the same and by such conduct wrongfully induced the Defendant, T Equipment, to breach its contract, as amended, with the Plaintiff." Count VI alleges that the plaintiff tendered due performance of its contract to T Equipment Corp. in October, 1980 but T Equipment Corp. "refused to permit the Plaintiff to perform." In support of his motion to dismiss Tamulis asserts that his having "disregarded" the allegedly wrongful acts of other defendants does not give rise to a cause of action for interference with contractual rights. In support of its motion to dismiss, T Equipment Corp. argues that its subcontract with the plaintiff was conditional upon the approval, never received, of both Susi and the Commonwealth's Department of Public Works. In support of this contention, T Equipment Corp. has submitted a copy of the subcontract and an amendment thereto as well as an affidavit of Tamulis. Both the subcontract and the amendment indeed provide: "This contract is contingent upon the approvals by both Susi and MDPW." Both documents are silent as to the form of the approval and Tamulis' affidavit asserts that no approval was received.

The plaintiff, in its opposition to T Equipment Corp's motion to dismiss, has submitted the affidavit of its president, one Lawrence A. Bertrand, which claims that Tamulis as well as representatives of Susi advised him on a number of occasions that the amended subcontract had all necessary approvals. The plaintiff has also submitted copies of several documents which on their face suggest at least tacit approval. Susi's purchase order to Insulfab, for example, states: "Any materials delivered and accepted by the MDPW ... are the full responsibility of Rand." Minutes of meetings held in June and July, 1980, indicate apparent cooperation at that time among representatives of the plaintiff, T Equipment Corp., Susi, Insulfab, and the Department of Public Works.

**Rulings of Law**

Mass. R. Civ. P. 8(a) requires a plaintiff to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Rule 12(b)(6) should be granted if and only if it appears certain that the plaintiff is not entitled to relief under any state of facts which could be proved in support of the claim and all inferences are to be taken in the plaintiff's favor. See, e.g., **Sheffield Progressive, Inc. v. Kingston Tool Co., Inc.**, Mass. App. Adv. Sh. (1980) 1139, 1140.

The elements of the tort of interference with contractual relations were recently restated by the Massachusetts Appeals Court in **Chemawa Country Golf, Inc. v. Wnuk,** Mass. App. Adv. Sh. (1980) 677, as follows: "(1) intentional and wilful acts (2) calculated to cause damage to the plaintiffs in their lawful business, (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant, (which constitutes malice), and (4) actual damages and loss resulting." **Id.** at 680. Interference with prospective contractual relations, the Court adds, is a "recognized extension of the more typical tort....It is not necessary that the perspective relation be expected to be reduced to a formal binding contract." **Id.** See, also, Restatement, Second, Torts, section 766, cited with approval in **Chemawa.** The issue with respect to Tamulis, therefore, is not whether the contract had ever been approved, but whether he may have incurred liability when he "totally disregarded" the contractual obligations of T Equipment Corp. toward the plaintiff.

This court has been unable to locate any reported Massachusetts case in which complete inaction is asserted as constitution interference with contractual relations. It is conceivable that such an omission in the face of an explicit affirmative duty to act, could be deemed "interference" under exceptional circumstances, but the plaintiff does not plead such a case. A recent opinion, **Steranko v. Inforex, Inc.,** 5 Mass. App. 253 (1977), specifically considers the liability of a corporate officer for allegedly interfering with his corporation's contract. In that case, a disgrunted employee sued a computer equipment company for breach of an employment contract, and joined the company president as a defendant. "A defendant may escape liability," stated the Court, "if the interference was privileged as part of his employment responsibilities....This rule has particular force as applied to corporate officers, since their freedon of action directed toward corporate purposes should not be curtailed by fear of personal liability." **Id.** at 273, and cases cited. This is a qualified privilege, however, and may be lost if the defendant acts out of "actual malevolence of malice." **Id.** The Court in **Steranko** found no evidence that the conduct of the company president emanated from actual malevolence or malice and he was therefore not subject to personal liability. The plaintiff in this action has alleged no malevolence on Tamulis' part, nor any malice in the sense of purposefully causing harm without justification. Tamulis should likewise escape personal liability for his behavior toward the plaintiff as president of T Equipment Corp.

With respect to T Equipment Corp.'s motion, it has submitted an affidavit and documents in support of its motion and the plaintiff has submitted an opposing affidavit and further documents, and as this court has not excluded these materials, "the motion shall be treated as one for summary judgment." Mass. R. Civ. P. 12(b). The issue therefore is whether "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law." Mass. R. Civ. P. 56(c). The plaintiff alleges that T Equipment Corp. breached a contract which was valid as originally executed and as amended. The contract contained a condition, **i.e.,** the approval of the general contractor and the Department of Public Works. The parties vigorously dispute the fulfillment of this condition and therefore the validity of the contract. This is without doubt a genuine issue as to a material fact, and T Equipment Corp. is not entitled to judgment as a matter of law.

**ORDER**

For the reasons set forth above, Tamulis' Motion to Dismiss is allowed and that of T Equipment Corp. is denied.

**Paul G. Garrity**
**Justice of the Superior Court**